UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-21168-ALTMAN/Reid

**RENZO BARBERI**,

    *Plaintiff*,

v.

**LOPEZ TIRES, INC.**, *et al.*,

    *Defendants*.

_____/

## ORDER

Raul and Nora Rodriguez, our Defendants, have filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("MTD") [ECF No. 51]. In that motion, the Defendants argue that the case is now moot because they've remedied the ADA violations the Plaintiff has identified in his Complaint. After careful review, we **DENY** the MTD.

## THE FACTS

Renzo Barberi, our Plaintiff, "suffers from paraplegia"—and, therefore, has a "qualified disability" under the Americans with Disabilities Act ("ADA"). Compl. ¶ 3 [ECF No. 1]. At some point before Barberi filed this lawsuit, he "personally visited Lopez Tires Shop, but was denied full and equal access, and full and equal enjoyment of the facilities, services, goods, and amenities within Lopez Tires Shop . . . due to the discriminatory barriers" on non-compliant facilities. *Ibid.* On March 23, 2023, Barberi sued Lopez Tires, Inc.—along with its owners, Raul Rodriguez and Nora Rodriguez—alleging eleven separate ADA violations.[1] Specifically, Barberi claims:

- The customer parking facility in front of the auto tire shop does not provide a compliant accessible parking space in violation of 2012 ADA Standards 502.1

---

[1] The Plaintiff has since dismissed his claims against Lopez Tires—and, on July 3, 2023, we terminated Lopez Tires as a defendant in this case. *See* Order Dismissing Lopez Tires, Inc. [ECF No. 22].

- The parking facility does not have the minimum number of accessible parking spaces required in violation of 2012 ADA Standards 208.2.
- The business does have one compliant accessible parking space with an adjacent aisle that is required in front of the main entrance in violation of 2012 ADA Standards 208.2.
- The existing accessible parking space is non-compliant as the identification striping is faded and not in a manner that is consistent with FDOT in violation of 2012 ADA Standards 502.6.1.
- The accessible parking space sign is missing from the non-compliant parking space as required and must be approved by the Department of Transportation in violation of 2012 ADA Standards 502.6.
- There were vehicles without accessible parking permits or marked license plates parked in and blocking the accessible parking spaces at the facility in violation of 2010 ADA Standards 208.3.1 and 502.3.
- There is no compliant aisle attached to an accessible route serving any existing parking space which would allow for safe entrance or exit of a vehicle for persons requiring mobility devices in violation of 2012 ADA Standards 502.2.
- There is no existing accessible route to help persons with disabilities enter the facility or safely maneuver through the parking area in violation of 2012 ADA Standards 206.2.1.
- The customer entrance is non-compliant and exceeds the maximum vertical rise allowed in violation of 2012 ADA Standards 303.2.
- The customer door has non-compliant doorknob-type hardware that is not easily operable in violation of 2012 ADA Standards 309.4.
- The facility does not provide compliant directional informational signage to an accessible route, as required when the main entrance is non-complaint in violation of 2012 ADA Standards 216.6.

*Id.* ¶ 15 Barberi seeks a declaration that Lopez Tires "is in violation of the ADA," *id.* ¶ 24 (Count I), and injunctions directing the Defendants (1) to "alter the subject facilities to make them readily accessible," *id.* ¶ 29 (Count II), (2) to "make reasonable modifications in [its] policies, practices, or procedures," *id.* ¶ 34 (Count III), and (3) to "maintain the alterations and modifications required to keep the Subject Facility accessible to and usable by individuals with disabilities and in compliance with Title III of the ADA," *id.* at 13 (Count IV). Barberi also demands "attorney's fees, costs and expenses paid by the Defendants." *Id.* ¶¶ 19, 25, 30, 35 (citing 42 U.S.C. § 12205).

The Defendants now claim that, soon after Barberi sued them, they "permanently remedied the structural ADA violations alleged in the complaint and will continue to remediate any future ADA

2

violations." MTD at 8. In their MTD, therefore, they contend that we "no longer [have] subject matter jurisdiction over this case" because the "Plaintiff's claims have become moot[.]" *Id.* at 1. Pursuant to our obligation to "zealously [e]nsure that jurisdiction exists over a case," *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001), we'll address (and reject) the Defendants' jurisdictional arguments.

## THE LAW

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Mingkid v. U.S. Att'y Gen.*, 468 F.3d 763, 768 (11th Cir. 2006) (quoting U.S. CONST. art. III, § 2). But a "federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, (1992)). Our mootness doctrine "provides that the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *KH Outdoor, L.L.C. v. Clay Cnty.*, 482 F.3d 1299, 1302 (11th Cir. 2007) (cleaned up). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "By its very nature, a moot suit cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005).

A Rule 12(b)(1) motion challenging a court's subject-matter jurisdiction may take the form of either a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A "factual attack," by contrast, "challenges the

3

existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). In considering a factual Rule 12(b)(1) motion, "a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991); *see also Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) ("When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts[.]").

## ANALYSIS

The Defendants advance a factual attack on Barberi's Complaint, arguing that his claims are "now moot since [they have] remedied the alleged access barriers that Plaintiff complains of in his complaint." MTD at 3. But the Defendants' assertion that they have "no intention of reinstating the challenged practice . . . is but one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *Sheely v. MRI Radiology Net., P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (cleaned up). And, in fact, "the voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed." *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d 1297, 1310 (11th Cir. 2011) (quoting *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998)). In determining whether voluntary cessation moots a case, we consider three factors: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely*, 505 F.3d at 1184.

Our Defendants fail to carry their "heavy burden" of showing that the alleged ADA violations

are moot. *Gil v. SMG Holdings I, LLC*, 2018 WL 2435162, at *3 (S.D. Fla. May 29, 2018) (Scola, J.). As a preliminary matter, it's not even clear that the Defendants have fixed all of the alleged defects. The parties, for instance, hotly contest whether "the ramp at the end of the marked accessible route sloping up to the main entrance door entryway," MTD at 7—and "the access aisle serving the parking space closest to Lopez Tires," Defendants' Amended Reply ("Amnd. Reply") [ECF No. 73] at 7—are now ADA compliant, *see* Plaintiff's Response in Opposition ("Resp.") [ECF No. 63] at 1 ("The ramp is noncompliant, the slope exceeds the maximum allowable limit, and does not provide required edge protection[.]"); *id.* at 5 ("The access aisle ground surface running slope exceeds the maximum slope allowed."). Both parties have submitted expert reports on these issues—with the Plaintiff's expert and the Defendants' experts (predictably) arriving at different conclusions. *Compare* Ex. B to Declaration of John Kronillis ("Kronillis Rpt.") [ECF No. 60-1] at 6 ("There is a ramp at the end of the marked accessible route sloping up to the main office door entryway (12.9%) exceeding the maximum slope allowed. A slope steeper than 1:8 (12.0%) is prohibited." (citing 2010 ADA Standards 405.2)),[2] *with* Rebuttal Report of Luis Androuin ("Androuin Rebuttal Rpt.") [ECF No. 73-2] at 18 (finding "slope

---

[2] In their Reply, the Defendants say that, because the Plaintiff's "submission of the [Kronillis] Expert Report on December 11, 2023 was untimely by nearly a period of thirty days," it should be stricken. Defendants' Reply [ECF No. 68] at 2; *see also* Motion to Strike [ECF No. 66] at 1 (moving "to strike the expert report of Jon Kronillis dated December 5, 2023" and "his Sworn Declaration dated December 11, 2023"). On December 21, 2023, we denied the Defendants' Motion to Strike this evidence without prejudice. *See* Omnibus Order [ECF No. 71] at 3 ("[T]he Defendants may also renew their objections to our consideration of the (allegedly) late-disclosed evidence."). By now, though, it's clear that the Defendants weren't prejudiced by the untimely disclosure because we ultimately gave them an extension of time to file an amended reply (along with a rebuttal report from *their* expert) responding to Kronillis's findings. *See ibid.* ("We'll therefore allow the Defendants to file a reply in support of their Motion to Dismiss—but only on the limited issue of subject-matter jurisdiction." (emphasis omitted)); *see also Vision I Homeowners Ass'n v. Aspen Specialty Ins. Co.*, 2009 WL 2746368, at *2 (S.D. Fla. Aug. 26, 2009) (Dimitrouleas, J.) ("Given that the prejudice they cite to is their inability to depose or develop rebuttal, the Court does not find this to be an insurmountable prejudice."); *RLI Ins. Co. v. OutsideIn Architecture, LLC*, 2023 WL 5840590, at *11 (M.D. Fla. Sept. 11, 2023) (Honeywell, J.) ("[E]xclusion is a harsh remedy that many courts are loathe to invoke absent a finding of bad faith or gamesmanship." (cleaned up)).

readings of 12.2% and 11.6%, both of which are within construction tolerances for ramps where 12% is the maximum allowable rise"); *and compare* Decl. of John Kronillis at 4 (finding that the slope of the "access aisle attached to the accessible route" is 2.7%), *with* Androuin Rebuttal Rpt. at 6–16 (finding the slope to be "below the 2.0% maximum allowable slope").

The Defendants also try to downplay certain discrepancies between the experts' measurements by referring to these as minor "variances in construction . . . 'subject to conventional building industry tolerances for field conditions.'" Amnd. Reply at 6 (quoting 28 C.F.R. Pt. 36, App. A § 3.2. O). But, while the ADA "does not demand . . . absolute perfection," *Ass'n for Disabled Ams., Inc. v. Key Largo Bay Beach, LLC*, 407 F. Supp. 2d 1321, 1341 (S.D. Fla. 2005) (King, J.), the Defendants never tell us how much imperfection is acceptable. In their Amended Reply, the Defendants point us to an unreported, out-of-district case, *Normann v. SDQ Fee LLC*, No. 13-cv-00154, 2013 U.S. Dist. LEXIS 162377 (D. Ariz. Nov. 14, 2013), saying that the district court there "found [ramps exceeding the maximum slope by .67%, .77%, .97%, 1.07%, and 1.27%] acceptable within the construction industry," Amnd. Reply at 7 (citing *Normann*, 2013 U.S. Dist. LEXIS 162377, at *20). But that's not what the *Normann* Court found. In fact, the court merely observed that *the plaintiff* had "failed to show," in *his* request for summary judgment, "that these deviations exceed industry standards[.]" *Normann*, 2013 U.S. Dist. LEXIS 162377, at *20. Here, by contrast, the burden is on the *Defendants* to show that these deviations are *within* industry standards. *See, e.g.*, *Gil*, 2018 WL 2435162, at *3 ("[T]he Defendants have [a] heavy burden to show the claimed ADA violations are moot." (citing *Sheely*, 505 F.3d at 1183)). And the Defendants haven't shown us that they are. So, while we're "free to independently weigh facts" in deciding whether a case has become moot, *Turcios*, 275 F. App'x at 880, the Defendants have given us no standard by which to measure their naked assertion that "any deviation found . . . is so slight as to fall within the 'construction tolerance' exception to the ADA," Amnd. Reply at 7; *see also, e.g.*, Androuin Rebuttal Rpt. at 18 (concluding that the ramp's "slope readings of 12.2% and 11.6% . . .

6

. are within construction tolerances for ramps where 12% is the maximum allowable rise (with minor exceptions not at issue here)"). Without any reasonable metric by which to assess these variances, we cannot say that the Defendants have met their heavy burden here.

But here's the thing: Even if the Defendants *have* remedied the alleged violations, they've nonetheless failed to "establish," based on the *Sheely* factors, "that it is absolutely clear that the violations alleged in the complaint cannot reasonably be expected to recur." *Gil*, 2018 WL 2435162, at *2. The first factor "cuts both ways" because "the challenged conduct was continuing but unintentional." *Smith v. Morgan*, 473 F. Supp. 3d 1266, 1271 (N.D. Ala. 2020). On the one hand, the Defendants' facility has been noncompliant "for almost fifteen years." Resp. at 12 (cleaned up) (citing Property Deed [ECF No. 63-2] (showing that the Defendants have owned the property since 2009)). On the other, the Defendants "were unaware that the property had any ADA barriers" until Barberi sued them. Defendants' Statement of Undisputed Facts ("Defs.' SOF") [ECF No. 51-1] ¶ 3 ("Prior to the filing of this action, Raul and Nora Rodriguez were unaware that the property had any ADA barriers." (citing Affidavit of Raul Rodriguez ("Rodriguez Aff.") [ECF No. 51-2] ¶ 3)). Still, "benign neglect" of ADA standards doesn't excuse a party's failure to follow the law. *See Helen L. v. DiDario*, 46 F.3d 325, 334 (3d Cir. 1995) ("Because the ADA evolved from an attempt to remedy the effects of 'benign neglect' resulting from the "invisibility" of the disabled, Congress could not have intended to limit the Act's protections and prohibitions to circumstances involving deliberate discrimination." (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985))); *see also Nat'l All. for Accessibility, Inc. v. McDonald's Corp.*, 2013 WL 6408650, at *6 (M.D. Fla. Dec. 6, 2013) (Kovachevich, J.) ("The absence of complaints by disabled individuals does not completely explain Defendants' non-compliance with the ongoing requirements of the ADA.").

As to the second factor, it's undisputed that the Defendants began renovations only "after this case was filed." Resp. at 13; *see also* Rodriguez Aff. ¶ 6 ("After retaining counsel, I realized that our

property contained a few ADA barriers such as to the parking lot . . . and wanted to make sure our property was ADA compliant."). And, while the Defendants insist that they're remediating the premises because of "a change of heart," Defs.' SOF ¶ 5; *accord* Rodriguez Aff. ¶ 6, that promise "does not suffice to make a case moot," *Sheely*, 505 F.3d at 1184 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)); *see also Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.*, 656 F.2d 999, 1001 (5th Cir. Unit B Sept. 1981) ("[D]efendants must offer more than their mere profession that the conduct has ceased and will not be revived."). Rather than take the Defendants at their word, we must look to their remedial actions to ensure that the "allegedly wrongful behavior could not reasonably be expected to recur." *Houston v. 7-Eleven, Inc.*, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014) (Scola, J.). For example, where a defendant expends significant resources on "structural modifications . . . to make the facility ADA compliant[,] . . . the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct." *Ibid.* (first citing *Nat'l All. For Accessibility, Inc. v. Walgreen Co.*, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011) (Corrigan, J.); then citing *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) (King, J.)).

In our case, although the Defendants "have undertaken permanent structural renovations to bring [the facility] into compliance," MTD at 12, not all the alleged defects can be remedied by structural modifications. For instance, the Complaint alleges that "vehicles without accessible parking permit or license plates . . . [have] block[ed] the accessible parking spaces located in the parking facility[.]" Compl. ¶ 15. Such "policy" defects may be rendered moot where the defendant "has adopted new policies that comply with the ADA[.]" *Alonso v. Alonso*, 2019 WL 5268554, at *4 (S.D. Fla. Oct. 17, 2019) (Scola, J.). The Defendants claim that "they have developed a policy to remedy any barriers that are readily achievable should the property become inaccessible at a later date." MTD at 12; *see also* Rodriguez Aff. ¶ 12 ("[I]n the event any issue arises in the future which causes the property to become inaccessible to any person, I will immediately remedy the issue if it is readily achievable.").

But they never tell us *specifically* what these new policies are. And, even if we were to take the Defendants at their word that, "in the event a car is blocking the entrance to Lopez Tires[,] . . . [they] will remedy the issue," *ibid.*—which we needn't do, *see Rogers v. China One Express Corp.*, 2016 WL 7324078, at *3 (S.D. Fla. Dec. 15, 2016) (Middlebrooks, J.) ("[T]he mere promise to remedy an ongoing violation is [not] enough to prove mootness.")—this *post hoc* remedy (unlike a costly structural modification) does nothing to prevent the violation from recurring, *cf. Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 170 (2000) (voluntary cessation moots a case only where "it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to *recur*" (emphases added & cleaned up)).

More problematically, because they "do not own Lopez Tires," the Defendants "do not control how Lopez Tires conducts its business." Defs.' Reply at 6. That the day-to-day operations of the facility are "beyond the control" of the Defendants further diminishes the value of their promise to prevent cars from blocking accessible spaces. *Sec'y of Lab. v. Burger King Corp.*, 955 F.2d 681, 685 (11th Cir. 1992). Because the Defendants haven't explained how they'll prevent noncompliant parking—and since they concede that they cannot "ensure compliance" from Lopez Tires, *ibid.*—"[n]ot only is it possible that the violation will recur, it is entirely possible that it will not actually stop," *Rogers*, 2016 WL at 7324078, at *3. This second *Sheely* factor thus favors Barberi.

The third factor—"whether, in ceasing the conduct, the defendant has acknowledged liability," *Sheely*, 505 F.3d at 1184—won't save the Defendants' mootness argument, either. Granted, upon learning of the property's defects, the Defendants "hired an ADA expert[,] Luis Androuin[,] to conduct an ADA compliance verification inspection of the parking lot and entrance door to the Lopez Tires business." Defs.' SOF ¶ 6 (first citing Rodriguez Aff. ¶ 7; then citing Declaration of Luis Androuin [ECF No. 51-3] ¶ 4; and then citing Supplemental Declaration of Luis Androuin [ECF No. 51-4] ¶ 3). And hiring compliance "consultants to implement accessibility enhancements" once

9

barriers are discovered is good evidence that a defendant "acknowledged liability." *Brahe v. Publix Super Mkts., Inc.*, 2014 WL 1400657, at *3 (M.D. Fla. Apr. 10, 2014) (Kovachevich, J.). But, as we've said, it remains unclear whether the Defendants, in fact, "ceas[ed] the conduct" and "corrected all of the architectural defects which had posed a barrier to Plaintiff's use of the facility." *Harty*, 2015 WL 4638590, at *5. And, by shifting the blame for some alleged violations on absent parties, *see* Defs.' Reply at 6 ("[I]f Lopez Tires allows a customer to pull up to get his tire pumped with air, Defendant Raul Rodriguez would have no control over it since he does not own that business."), the Defendants seem reluctant to accept full responsibility for the alleged ADA violations, "furthermore ensur[ing] that a live dispute between the parties remains," *Sheely*, 505 F.3d at 1187.

*\*\*\**

The Defendants *may* have temporarily remedied some (or even all) of the ADA violations alleged in the Complaint. But that alone doesn't moot this case. *See Bd. of Regents*, 633 F.3d at 1310 ("'[T]he voluntary cessation of challenged conduct will only moot a claim when there is no reasonable expectation that the accused litigant will resume the conduct after the lawsuit is dismissed." (cleaned up)). Despite the structural changes the Defendants *might* have made thus far, their admitted lack of control over the facility's day-to-day operations and their inability to articulate specific prevention policies preclude a finding that it's "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F. 3d 1117, 1131 (11th Cir. 2005) (cleaned up); *see also Morgan*, 473 F. Supp. 3d at 1272 ("[A plaintiff] must establish 'that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" (quoting *W.T. Grant Co.*, 345 U.S. at 633)).

Accordingly, "whether or not the Plaintiff is entitled to the injunctive relief he seeks . . . is a question unsuitable for disposition at this stage in this case" because "the Defendants have not met their heavy burden to show that the claimed ADA violations are moot." *Gil*, 2018 WL 2435162, at *3

(citing *Sheeley*, 505 F.3d at 1183). We'll therefore allow the Plaintiff's claims to proceed to summary judgment on the "ADA violations actually alleged in the Complaint." *Access 4 All, Inc. v. Bamco VI, Inc.*, 2012 WL 33163, at *6 (S.D. Fla. Jan. 6, 2012) (Cohn, J.).

## CONCLUSION

After careful review, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction [ECF No. 51] is **DENIED**.

2. The parties may file renewed motions for summary judgment **by April 1, 2024**.

3. The Clerk shall **REOPEN** this case.

**DONE AND ORDERED** in the Southern District of Florida on March 18, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record